MOUND CITY MILL & ELEVATOR COMPANY, Appellant, v. THOMAS L. KENNEDY, Doing Business as KENNEDY GROCERY COMPANY, Respondent.

Kansas City Court of Appeals.   November 7, 1921.

1 SALES: Damages: For Refusal of Buyer to Accept Flour, Measure of Damages Difference Between Contract Price and Price Realized by Sale to Others. Where seller ground all wheat to which it was entitled under government war-time regulations, and sold the same to others, and buyer refused to accept flour for manufacture. the measure of damages was not the difference between contract price and what it would cost to manufacture and deliver the flour, but the difference between contract price and the price at which the seller sold flour to others.

2. Damages: Where Plaintiff Failed to Show What its Damages Were under Proper Measure of Damages it Was Entitled to Recover Only Nominal Damages. In an action for damages for refusal of buyer to accept goods sold, the plaintiff not having shown what its damages were, under the proper measure of damages, was entitled to nominal damages.

Appeal from Circuit Court of Buchanan County.— *Lawrence H. Vories,* Judge.

AFFIRMED.

*Wm. E. Bissett* and *Randolph & Randolph* for appellant.

*Strop & Mayer* and *Eugene Silverman* for respondent.

BLAND, J.—This is a suit upon the following contract—

"The Mound City Mill Co., Manufacturers of High Grade Flour and Choice Corn Meal, Mound City, Mo.

July 26, 1917.  Memo of Agreement.  Made and entered into this 26th day of July, 1917, between Mound City Mill & Elevator Co., of Mound City, Mo., and Kennedy Grocery Co., of St. Joseph, Mo.

The Mill Company hereby sells to the Kennedy Gro. Co. 2000 barrels Standard Flour, Straight Grade, strictly Hard Wheat Flour, 90%, @ $12.00 per bbl., F. O. B. at St. Joseph, Mo., to be shipped as follows:

First 200 bbls. to be shipped on or about September 20th, the remainder to be shipped at each succeeding thirty days, as ordered out by the Kennedy Gro. Co. until all has been ordered out.

If Kennedy Gro. Co. furnish bags to be allowed $.25 per bbl. on bags furnished by them.

Terms of contract, cash on arrival draft for each car of flour as shipped, less 1% discount.

MOUND CITY MILL & ELEVATOR CO. Per W. R. Hill,

KENNEDY GRO. CO.    T. KENNEDY, JR."

There was a verdict and judgment for plaintiff in the sum of $400 and plaintiff has appealed.

The facts show that plaintiff operated a flour mill in Mound City, Missouri, and that about October 1, 1917, on defendant's order it shipped the first car of 200 barrels povided for by the contract.  Defendant refused to accept the flour, claiming it was shipped under a subsequent contract which provided a lower price.  Plaintiff refused to recognize defendant's contention that he was entitled to the flour under the later contract, and defendant refused to accept the flour under the first contract, resulting in defendant's refusing to accept any flour from plaintiff.  Plaintiff brought this suit for damages in the sum of $400 for the refusal of defendant to take the 200 barrels of flour manufactured; also for damages for defendant's refusal to  take the rest of the two thousand barrels at $12 per barrel, amounting to $4256.50, being the difference between the contract price and the cost of manufacture and delivery of the 1800 barrels of flour.

209 M. A.—15

The court refused to give plaintiff's instruction No. 3 which sought to tell the jury, among other things, that if they found the flour was to be manufactured by plaintiff subsequently to the making of said contract and that plaintiff had not manufactured the remaining 1800 barrels at the time defendant refused to accept any flour under said contract, then plaintiff's damages as to the 1800 barrels was the difference between the contract price of the flour and the cost of manufacture and delivery of the same to the defendant at St. Joseph. The court gave defendant's instruction No. 1 which told the jury that plaintiff was not entitled to recover any damages for breach of the contract except for defendant's refusal to take the first 200 barrels of flour. The damages sustained by plaintiff on this latter account was $400 in which sum the jury returned their verdict.

This contract was entered into a short time before regulations were made by the United States Government in relation to the manufacture of flour. These regulations provided, among other things, that the amount of wheat a mill might grind into flour should be based upon its average grind for the three preceding years; that if the mill had contracts on hand at the time of the promulgation of the regulations which would require a greater grind than the allotment, that it should be permitted to fill all such contracts even though in order to do so the mill would be required to grind wheat in excess of the allotment; that if the wheat required to make the flour which was sold under contracts made prior to the promulgation of the regulations, did not take up the allotment the mill was entitled to as much additional wheat to fill new contracts as would bring the grind up to the allotment. Of course, if the wheat used in filling sales made prior to the promulgation of the regulations exceeded the allotment, then no new wheat for new sales could be had by the mills.

The evidence shows that plaintiff's allotment of wheat, during the nine months plaintiff claims was the

maximum time defendant had to take the wheat under the contract, exceeded the amount of its contract with defendant; that it ground and sold its full allotment and that this was made up partially of wheat to fill new contracts, therefore, it is apparent that all of plaintiff's contracts on hand at the time of the promulgation of the regulations were not sufficient to take up plaintiff's allotment and that plaintiff ground and sold all of the wheat that it was entitled to under the government regulations, including the wheat that it would have ground to fill the contract with defendant. The manager of plaintiff testified that the contracts filled by plaintiff after the execution of the contract sued upon amounted to considerably more than 2000 barrels and that "we probably would have used this wheat in makng this flour (the flour covered by the contract sued upon) that was used in other contracts."

It is insisted by the defendant that the contract was unenforceable for the reason that it was unilateral in that defendant was not required to accept any specific amount of flour per month but that it might order as little as one bag of flour per month and that if it chose to do so, a great many years would be required to fulfill the contract. It is plaintiff's contention that the contract provides that defendant should take at least one car load of 200 barrels every thirty days. Under plaintiff's contention, which we accept for the purposes of this case without passing upon, defendant would have been compelled to have accepted all the flour covered by the contract within nine months.

Plaintiff complains of the refusal to give its instruction No. 3. We think that the court properly refused that instruction, for the reason that the evidence shows that plaintiff ground the wheat that it would use to fill the contract and sold the output to other parties, and that it could not have ground any more wheat even had defendant not breached his contract. Therefore, it is apparent that what plaintiff lost is not the difference

between the contract price and what it would cost to manufacture and deliver the flour but the difference between the contract price and the price at which plaintiff sold this flour to others, of which there is no evidence.

Complaint is made of the giving of defendant's instruction No. 1. We think there is no merit in this contenton. Plaintiff not having shown what its damages were under the proper measure of damages in this case, was entitled to recover for only the refusal to take the first 200 barrels that were manufactured and nominal damages for the refusal to take the remainder of the flour that was not manufactured at the time of the alleged breach. [Zimmerman v. T. C. Bottom Produce Co., 192 S. W. 1038.] Plaintiff recovered a judgment for $400 which assessed the cost against the defendant and in plaintiff's favor.

Plaintiff having, therefore, recovered all that it was entitled to under the evidence, the judgment should be affirmed and it is so ordered.

All concur.